STATE, USE OF STEVENS ENTERPRISES, INC. *v.* McDONNELL.

No. 41130          May 11, 1959          111 So. 2d 662

White & White, D. Knox White, Gulfport; Wells, Thomas & Wells, Charles Clark, Milton H. Mitchell, Jackson, for appellants.

*Joe T. Patterson,* Atty. Gen., *John E. Stone, Jackson & Ross,* Jackson; *Bidwell Adam,* Gulfport; *Snow, Covington & Shows,* Meridian, for appellees.

APPELLANT IN REPLY.

PER CURIAM.

On October 20, 1954 the appellee, John Edward (Eddie) McDonnell, sold under certain sales tax warrants issued by the Honorable A. H. Stone, State Tax Commissioner, a certain lot of automotive equipment consisting of trucks and automobiles, a certain lot of music machines, pin-ball machines, candy vending machines, etc., at the northwest front door of the courthouse in Harrison County, Mississippi.

The appellant, Stevens Enterprises, Inc., was contesting the amount of taxes assessed against it by the State Tax Commissioner and the result of that suit is reported in 226 Miss. 806, 85 So. 2d 461. The taxpayer sought an injunction from the Chancery Court of Harrison County to prevent the execution of the sales tax warrants involved in the last above-styled cause, but which writ of injunction was refused by the chancery court. Upon appeal from the action of the chancery court in refusing to grant the injunction the case was dismissed here on account of the question's being moot, since the sale of the property complained of in the instant case had been made in the meantime. Stevens Enterprises, Inc. v. McDonnell, Sheriff and Tax Collector, 226 Miss. 826, 85 So. 2d 468.

The appellee, McDonnell, before making the sale of the property which he had seized to sell under the said warrants, required of the State Tax Commission an indemnifying bond for his protection. The indemnifying bond was furnished in the amount of $20,000 with the appellee, U. S. F. & G. Co. as the surety of the said State Tax Commission.

Upon assuming the duties of his office as Sheriff and Tax Collector of Harrison County the appellee, McDonnell, executed a $10,000 bond to guarantee the faith-

ful performance of his duties as sheriff and tax collector. His surety on that bond was also the U. S. F. & G. Co., but he is indemnified to the extent of his $20,000 indemnifying bond in connection with the alleged illegal sale herein complained of.

The instant suit was brought against the sheriff and the surety on the said bonds for the total sum of $120,063.40. It is alleged that the sheriff and tax collector made an illegal sale of the property of the Stevens Enterprises, Inc., and that the sheriff and the surety on his said bonds are liable to him in the amount sued for, instead of only the maximum penalty of the bonds insofar as the surety is concerned.

The president of the Stevens Enterprises, Inc., had been to Mississippi and personally observed the property about three months prior to the date of its seizure, and as a witness at the trial of the instant case he undertook to give the original cost, purchase date, mileage on some of the automotive equipment, and what he considered to be the fair cash market value of the music machines, pin-ball machines, candy vending machines, etc., and then gave the total of all values involved as being more than $40,000 which, as we understand, does not involve the sheriff's fees and costs, some cash taken from vending machines and funds of the taxpayer garnisheed at the bank.

On the other hand the testimony on behalf of the appellees was to the effect that some of the property seized was in bad condition both at the time of the seizure and sale, and the sheriff testified that a part of the property was "serviceable," that is could be used, and that other items were "repairable," that is could be repaired, and the testimony on behalf of the appellees further disclosed that the property's fair cash market value *was far less* than the calue testified to by the plaintiff. At the sale of the Stevens Enterprises, Inc., made a bid of $6,000 for the property through its attorney who had

been authorized to bid as much as $7,500 therefor. The appellee, sheriff and tax collector struck the property off to the state for the sum of $10,000, there being no bid higher than that made by him for the State Tax Commission, and the state undertook to resell the same at private sale as its own, but the record does not disclose how much of the property was sold by the state at private sale after October 20, 1954, or how much was realized by the state from a resale of the property as the state may have actually resold to indicate its fair cash market value.

Section 1923, Code of 1942 provides: "All sales by any sheriff by virtue of an execution or other process, when not issued by a justice of the peace, shall be made at the courthouse of the county; but personal property too cumbersome to be removed, may be sold at the place where the same may be, or at any convenient place; * * *." The trial court was of the opinion, and we think he was correct in so holding, that the property seized should have been present at the sale. At the time of the sale the automotive equipment was stored in the Markham garage in the City of Gulfport and the other property hereinbefore mentioned was stored in a warehouse in the City of Biloxi, some fifteen miles away, at which two places many of the bidders had viewed the same prior to the sale. Certain perishable articles of merchandise, candy, etc., had been disposed of prior to the date of the sale.

The sales tax warrants were for the collection of the total sum of $21,084.61 but it was the contention of the appellants that the taxpayer then owed less than $200 in taxes.

As hereinbefore stated the sale was advertised to be made at the county courthouse in Gulfport. The proof disclosed that there was not enough room in front of the courthouse, and between the courthouse and the street to store all of the property which had been seized and

that in fact it would have required all the space between the courthouse and the street and at least a block of the street in front of the courthouse for the assembling of all of the articles that had been seized. But the trial court was evidently of the opinion that the sale of the automotive equipment should have been made at the place where the same was stored and that the sale of the other equipment should have been made where the same was located in the warehouse, unless it was, as shown by the evidence, not feasible to have it all present at the courthouse where it was sold and where it had been advertised to be sold.

The trial court gave a peremptory instruction in favor of the plaintiff which reads as follows: ''The Court instructs the jury to find for the Plaintiff in the amount of $996.22, being the fees and costs retained by the Sheriff, *plus the difference, if any,* between the fair cash market value of the property seized by the Sheriff, as may be shown by a preponderance of the evidence, and the sum of $12,094.25, being the amount realized by the Sheriff from the sale of said property.'' (Emphasis ours.)

The jury rendered a verdict for the sum of $996.22, but the court suggested that there be an ''additur'' thereto in the sum of $500 which was agreed to by the appellees and a final judgment was rendered against them for the sum of $1,496.22.

■■ There is no cross-appeal or cross-assignment of error as to the granting of the instruction in favor of the plaintiff on liability. But the appellants have prosecuted this appeal on the ground that the verdict was grossly inadequate. They also assign as error, among other things, the action of the trial court in limiting the liability of the surety company to the penalty of its bonds. We don't think there was any error in thus limiting the liability of the surety company ■■ but we have concluded that the case should be reversed and

remanded on the ground that the amount of the verdict is so grossly inadequate as to evince bias in favor of the sheriff, and since the case is to be reversed and re-manded for a new trial we refrain from undertaking to review and discuss in detail the testimony introduced on behalf of the respective parties.

We reverse and remand the case in order that another jury may pass on the amount of the damages only, since the *sale,* at least, was illegal.

Reversed and remanded.

*McGehee, C. J.,* and *Hall, Lee, Holmes,* and *Gillespie, JJ.,* concur.